IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| MARY GURSKY, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) |
| | )    No. 16-cv-2654-TMP |
| CAROLYN W. COLVIN, ACTING | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
|     Defendant. | ) |

ORDER REMANDING CASE PURSUANT TO 42 U.S.C. § 405(g)

Before the court is plaintiff Mary Gursky's appeal from a final decision of the Commissioner of Social Security[1] ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401 *et seq.* On October 25, 2016, the parties consented to the jurisdiction of the United States magistrate judge pursuant to 28 U.S.C. § 636(c). (ECF No. 10.) For the reasons set forth below, the decision of the Commissioner is reversed and the action is remanded pursuant to sentence four of 42 U.S.C. § 405(g).

I.     PROCEDURAL HISTORY

---

[1]Carolyn W. Colvin was the Acting Commissioner of Social Security at the time this case was filed. Therefore, she is named in the in the caption to this case. As of the date of this order, the Acting Commissioner of Social Security is Nancy A. Berryhill.

On March 7, 2013, Gursky applied for disability benefits under Title II of the Act. (R. at 193.) Gursky alleged disability beginning on March 31, 2006, due to rheumatoid arthritis, fibromyalgia, depression and pain. (R. at 193, 206.) Gursky's last date insured was December 31, 2013. (R. at 23, 220.) The Social Security Administration ("SSA") denied Gursky's application initially and upon reconsideration. (R. at 113, 118.) At Gursky's request, a hearing was held before an Administrative Law Judge ("ALJ") on April 27, 2015. (R. at 38, 122.) On August 13, 2015, the ALJ issued a decision denying Gursky's request for benefits after finding that Gursky was not under a disability because she retained the residual functional capacity ("RFC") to perform jobs that exist in significant numbers in the national economy. (R. at 25-31.) On June 21, 2016, the SSA's Appeals Council denied Gursky's request for review. (R. at 1.) Therefore, the ALJ's decision became the final decision for the Commissioner. (Id.) Subsequently, on August 11, 2016, Gursky filed the instant action. (ECF No. 1.) Gursky argues that (1) the court should remand the case so that the ALJ may review new evidence, (2) the ALJ improperly weighed the opinions of Gursky's treating physician and therapists, and (3) the record lacks substantial evidence to support the ALJ's finding that Gursky's testimony was not entirely credible. (ECF No. 12 at 12 to 20.)

## II.  CONCLUSIONS OF LAW

**A.   Standard of Review**

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which she or he was a party.  "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision.  Id.; Burton v. Comm'r of Soc. Sec., No. 16-4190, 2017 WL 2781570, at *2 (6th Cir. June 27, 2017); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007).  Substantial evidence is more than a scintilla of evidence but less than a preponderance, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly

detracts from its weight.'" Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) (quoting Smith v. Sec'y of Health & Human Servs., 893 F.2d 106, 108 (6th Cir. 1989)). Similarly, the court may "not try the case de novo, resolve conflicts in the evidence or decide questions of credibility." Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (quoting Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)). The Commissioner, not the court, is charged with the duty to weigh the evidence and to resolve material conflicts in the testimony. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997); Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990); Prater v. Comm'r of Soc. Sec., No. 114CV01221STATMP, 2017 WL 2929479, at *1 (W.D. Tenn. July 10, 2017).

**B.    The Five-Step Analysis**

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."

-4-

42 U.S.C. § 423(d)(1).  Additionally, section 423(d)(2) of the Act states that:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

Under the Act, the claimant bears the ultimate burden of establishing an entitlement to benefits.  Oliver v. Comm'r of Soc. Sec., 415 F. App'x 681, 682 (6th Cir. 2011).  The initial burden is on the claimants to prove they have a disability as defined by the Act.  Siebert v. Comm'r of Soc. Sec., 105 F. App'x 744, 746 (6th Cir. 2004) (citing Walters, 127 F.3d at 529); see also Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1173 (6th Cir. 1990).  If the claimant is able to do so, the burden then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background.  Born, 923 F.2d at 1173; see also

Griffith v. Comm'r of Soc. Sec., 582 F. App'x 555, 559 (6th Cir. 2014).

Entitlement to social security benefits is determined by a five-step sequential analysis set forth in the Social Security Regulations. See 20 C.F.R. § 404.1520. First, the claimant must not be engaged in substantial gainful activity. See 20 C.F.R. § 404.1520(b). Second, a finding must be made that the claimant suffers from a severe impairment. 20 C.F.R. § 404.1520(a)(4)(ii). In the third step, the ALJ determines whether the impairment meets or equals the severity criteria set forth in the Listing of Impairments contained in the Social Security Regulations. See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If the impairment satisfies the criteria for a listed impairment, the claimant is considered to be disabled. On the other hand, if the claimant's impairment does not meet or equal a listed impairment, the ALJ must undertake the fourth step in the analysis and determine whether the claimant has the RFC to return to any past relevant work. See 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(e). If the ALJ determines that the claimant can return to past relevant work, then a finding of not disabled must be entered. Id. But if the ALJ finds the claimant unable to perform past relevant work, then at the fifth step the ALJ must determine whether the claimant can perform other work existing in significant numbers in the national

economy.  See  20  C.F.R.  §§  404.1520(a)(4)(v),  404.1520(g).
Further  review  is  not  necessary  if  it  is  determined  that  an
individual  is  not  disabled  at  any  point  in  this  sequential
analysis.  20 C.F.R. § 404.1520(a)(4).

## C.    **Whether to Remand for Review Based on New Evidence**

Gursky  requests  that  the  court  remand  her  case  so  the  ALJ
may  consider  the  additional  evidence  of  a  new  medical  assessment
from  Gursky's  treating  source,  Dr.  Judith  Lee-Sigler.[2]  (ECF  No.
12 at 14 to 16.)  Prior to her hearing, Gursky had provided the
ALJ  with  an  incomplete  medical  assessment  form  by  Dr.  Lee-
Sigler.  (R. at 788–92.)  On October 27, 2015, after the ALJ's
decision,  Dr.  Lee-Sigler  gave  Gursky  a  complete  medical
assessment  form  in  which  she  had  checked  boxes  to  indicate  that
Gursky suffers from severe physical and mental limitations. (ECF
No. 12-1.)

Courts  may  remand  a  case  to  an  ALJ  for  review  of  additional
evidence  "only  upon  a  showing  that  there  is  new  evidence  which
is  material  and  that  there  is  good  cause  for  the  failure  to
incorporate  such  evidence  into  the  record  in  a  prior  proceeding
.  .  .  ."  42 U.S.C. § 405(g).  As the language of the statute
indicates,  this  places  the  burden  of  production  upon  the
claimant.  See Miller v. Comm'r of Soc. Sec., 811 F.3d 825, 839

---

[2]The  parties  both  describe  Dr.  Lee-Sigler  as  a  treating  source.
(ECF No. 12 at 21; ECF No. 13 at 4.)

(6th Cir. 2016) (citing 42 U.S.C. § 405(g); Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001)).

Regarding the first requirement, in order to be new, the evidence must not have existed or been "available to the claimant at the time of the administrative proceeding." Deloge v. Comm'r of Soc. Sec. Admin., 540 F. App'x 517, 519 (6th Cir. 2013) (citing Foster, 279 F.3d at 357). The new medical assessment was not available to the ALJ at the time of the disability determination. However, the "insurmountable hurdle" for Gursky is that this medical assessment was available before June 21, 2016, which is when the SSA Appeal's Counsel denied Gursky's request for review. Lee v. Comm'r of Soc. Sec., 529 F. App'x 706, 717 (6th Cir. 2013) (refusing to remand a Social Security Appeal to the ALJ for review of evidence that the claimant had possessed during the SSA appellate review but had not submitted to the Appeal's Counsel). But see Templeton v. Comm'r of Soc. Sec., 215 F. App'x 458, 463-64 (6th Cir. 2007) (noting that "[e]vidence is 'new' only if it was not in existence or was not available prior to the ALJ's decision"). The medical assessment was available to Gursky during the course of her administrative proceeding; ergo, it is not new evidence.

As for the second requirement, "evidence is 'material' only if there is 'a reasonable probability that the [Commissioner] would have reached a different disposition of the disability

claim if presented with the new evidence.'" <u>Deloge</u>, 540 F. App'x
at 519 (alteration in original) (quoting <u>Sizemore v. Sec'y of
Health & Human Servs.</u>, 865 F.2d 709, 711 (6th Cir. 1988)). This
evidence is not material because it is not connected to the
relevant time period — March 31, 2006, Gursky's disability onset
date, to December 31, 2013, the last date Gursky was insured.
<u>See</u> <u>McCraney v. Comm'r of Soc. Sec.</u>, 68 F. App'x 570, 572 (6th
Cir. 2003) (noting that "the district court properly found that
the proposed evidence was not material because it involves
mental evaluations that were obtained long after the ALJ denied
[the claimant's] current application" (citing <u>Oliver v.
Secretary of Health and Human Servs.</u>, 804 F.2d 964, 966 (6th
Cir. 1986))).

Gursky attempts to relate the evidence back to when she was
insured by pointing out that Dr. Lee-Sigler had treated her
before December 31, 2013, and that Dr. Lee-Sigler indicated in
the new form that Gursky's limitations existed before December
31, 2013. (ECF No. 12 at 15 to 16.) These arguments are of no
avail. Dr. Lee-Sigler did not treat Gursky before December 31,
2013. It was a coworker of Dr. Lee-Sigler's, Dr. David Brough,
who treated Gursky prior to December 31, 2013. (R. at 764,
788.) Dr. Lee-Sigler did not start treating Gursky until
October 1, 2014. (R. at 761–62, 788.) Thus, she must have
based her assessment upon observations that she made after

Gursky's insurance ended, rendering it "of little probative value." See Strong v. Soc. Sec. Admin., 88 F. App'x 841, 845 (6th Cir. 2004)(citations omitted); Jones v. Berryhill, No. 13-1134, 2017 WL 1187937, at *8 (W.D. Tenn. Mar. 30, 2017). Furthermore, Dr. Lee-Sigler did not point to any evidence to support her opinion that Gursky possessed these limitations prior to December 31, 2013. Strong, 88 F. App'x at 845–46 ("Although [the medical source] opined long after the relevant period that Claimant had been disabled during the relevant period, such a retrospective and conclusory opinion is not entitled to significant weight because it is not supported by relevant and objective evidence." (citing Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 287 (6th Cir. 1994); 20 C.F.R. § 404.1527(d)(2)-(3))). The absence of any pertinent connection between this opinion and the relevant time period renders it of little value to an ALJ. In failing to demonstrate that the evidence is new or material, Gursky has not carried the burden of proof prescribed by 42 U.S.C. § 405(g). Thus, the court denies this portion of her appeal.

**D.  Whether the ALJ Erred When Assessing the Medical Sources' Opinions**

    1.  Assessment of Dr. Lee-Sigler's Opinion

Gursky argues that the ALJ erred by giving insufficient weight to Dr. Lee-Sigler's incomplete medical assessment. As

discussed above, Dr. Lee-Sigler began treating Gursky on October 1, 2014, and saw her three additional times before partially completing the medical assessment form Gursky submitted to the ALJ. (R. at 761-61, 788.) Dr. Lee-Sigler reported to the ALJ that Gursky suffered from lumbar spondylosis, rheumatoid arthritis, fibromyalgia, sacroiliitis, and bursitis. (R. at 788.) In addition, Gursky had a limited range of external and internal rotation in her left hip and tenderness in her sacroiliac joint area and lateral hip. (R. at 788.) As a result of these conditions, Dr. Lee-Sigler checked a box indicating that Gursky would frequently experience symptoms that would interfere with her attention and concentration. (R. at 788-89.) Dr. Lee-Sigler stated that she did not fill out three of the pages of the form because she had not yet finished evaluating Gursky. (R. at 792.)

The ALJ gave little weight to Dr. Lee-Sigler's opinion because the assessment was incomplete. (R. at 29.) Gursky contends that the ALJ violated procedural requirements by failing to give a reasoned basis for setting aside this incomplete opinion.

Treating sources are acceptable medical sources who have, or have had, an "ongoing treatment relationship" with the claimant. 20 C.F.R. § 404.1527(a)(2). If an ALJ finds a treating source's diagnostic techniques are medically acceptable

and the substantial evidence of the claimant's record accords with the treating source's medical opinion, then the ALJ will give that opinion "controlling weight." 20 C.F.R. § 404.1527(c)(2). In the event that the treating source's opinion does not meet these requirements and, therefore, does not merit controlling weight, the ALJ must apply a set of regulatory factors to determine what weight to give the opinion. 20 C.F.R. § 404.1527(c)(2)–(6). The Sixth Circuit emphasizes that ALJs must apply all of these factors, but it has recognized three instances where it amounts to harmless error that an ALJ failed to apply the factors to the treating source's opinion. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 546–47 (6th Cir. 2004)(citing N. L. R. B. v. Wyman-Gordon Co., 394 U.S. 759, 766 n.6 (1969)). One of these exceptions is when the "treating source's opinion is so patently deficient that the Commissioner could not possibly credit it." Id.

Although the ALJ erred by failing to apply the regulatory factors to Dr. Lee-Sigler's incomplete medical assessment, the error was harmless as Dr. Lee-Sigler's opinion is "patently deficient." The first component contributing to the deficiency of this opinion is that it lacks any explanation as to how or why Gursky's condition would frequently interfere with her work. See Hernandez v. Comm'r of Soc. Sec., 644 F. App'x 468, 474 (6th Cir. 2016)(finding a doctor's opinion patently deficient because

-12-

it consisted of a "check-box analysis . . . not accompanied by any explanation" (citing Keeton v. Comm'r of Soc. Sec., 583 F. App'x 515, 525 (6th Cir. 2014))); Ellars v. Comm'r of Soc. Sec., 647 F. App'x 563, 566–67 (6th Cir. 2016) (citations omitted) (same). Second, the opinion is deficient because it is based upon a limited treatment relationship that began almost a year after the last date Gursky was insured. Watters v. Comm'r of Soc. Sec. Admin., 530 F. App'x 419, 423 (6th Cir. 2013) (finding a treating source's opinion patently deficient because, among other reasons, the "medical examinations post-dated the relevant period by two to seven years"). Finally, it is deficient because, as the ALJ pointed out, it is incomplete. See Edwards v. Comm'r of Soc. Sec., 636 F. App'x 645, 650–51 (6th Cir. 2016) (finding that a treating source's failure to complete a mental impairment questionnaire was one of the "reasons for discounting" it); Riddle v. Astrue, No. 3:08-CV-132, 2009 WL 2406423, at *7 (E.D. Tenn. July 31, 2009) (same). In light of the insubstantial nature of the opinion, the ALJ's abridged explanation of the weight that it merited was a harmless error.

## 2. Assessment of Aaron Potratz's Opinion

Gursky argues that the ALJ should have given greater weight to the opinions of her therapist Aaron Potratz, LPC, MA. (ECF No. 12 at 16 to 18.) Potratz began treating Gursky on February 7, 2013, and stopped on October 8, 2013, shortly after Gursky

moved from Oregon to Tennessee.  (R. at 673, 693.)  Over the
course of this treatment, Potratz met with Gursky 16 times both
individually and in couple's sessions.  (R. at 673-93.)  These
sessions lasted an average of 55 minutes, but several lasted as
long as 85 minutes and two lasted for over 100 minutes.  (R. at
673-93.)  During this treatment, Gursky discussed the severity
of her depression; problems with her antidepressants; episodes
of confusion, anger, and disorientation; and her inability to
cope with her emotions.  (R. at 673, 677, 683-86, 689-90.)

On August 23, 2013, Potratz wrote an opinion in which he
stated that Gursky presented with symptoms consistent with
chronic Posttraumatic Stress Disorder.  (R. at 675-76.)  He
further explained that, despite the coping skills practiced in
therapy, she remained "subject to bouts of depression, anxiety,
anger and other destructive (yet normative for traumatic events)
reactions."  (R. at 675-76.)  He also stated that she "has
difficulty communicating clearly in some social situations, and
becomes overanxious without the presence of her companion animal
(dog)."  (R. at 676.)

On May 4, 2015, Potratz filled out a mental assessment form
based upon his sessions with Gursky in 2013.  (R. at 974-75.)  A
good deal of this form consists of checked boxes by which
Potratz indicated that Gursky would likely miss more than four
days of work a month due to her impairments and that she was

either seriously limited, unable to meet competitive standards, or had no useful ability to function in 16 categories of mental abilities and aptitudes needed to do unskilled work. (R. at 974-75.) Potratz substantiated his opinion by describing Gursky's treatment and providing the following clinical findings: "Client exhibited flat affect, limited insight, poor judgment, anxious mood, disorientation during times of stress (losing time and place), and pressured speech when discussing stressful experiences in the safety of the clinical office. These symptoms indicate a high severity of impairment." (R. at 974.)

Citing Potratz's status as a non-acceptable medical source, the length of the treating relationship, and the date when the treating relationship ended, the ALJ gave Potratz's opinion and assessment little weight. (R. at 29.) Gursky contests that, since the opinion was consistent with the treatment notes and provides objective findings, the ALJ should have given the opinion "great weight." (ECF No. 12 at 17 to 18; ECF No. 14 at 3 to 4.)

Therapists are not acceptable medical sources, so their opinions are not entitled to controlling weight. See 20 C.F.R. §§ 404.1502(a), 404.1513(a); SSR 06-03P, 2006 WL 2329939, at *2 (Aug. 9, 2006). When considering what weight to give a therapist's opinion, the ALJ employs the same factors used for

analyzing a treating source's opinion, and applies whatever factors are relevant to the opinion. 20 C.F.R. § 404.1527(f)(1). Those factors include the length and nature of the treatment relationship, the frequency of exams, the evidence upon which the therapist bases her or his opinion, the opinion's consistency with the record as a whole, whether the therapist has specialized in her or his area of practice, and any other relevant factor, like the therapist's familiarity with the claimant's full medical record. 20 C.F.R. § 404.1527(c)(2)–(6). After considering all the pertinent factors, if the ALJ determines that the opinion might impact the outcome of the case, then the ALJ must explain the weight given to the opinion in a fashion that "allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." 20 C.F.R. § 404.1527(f)(2).

In this case, the ALJ had to explain the weight given to Potratz's opinions because these opinions would have affected the outcome of the case. Potratz opined that Gursky's mental limitations would cause her to miss more than four days of work a month. (R. at 975.) The vocational expert testified that Gursky could not retain any of the jobs she was hypothetically capable of working if she had more than two unscheduled absences a month. (R. at 78.)

The ALJ's justification for the little weight given to Potratz's opinions falls short of the regulatory requirements. First of all, it is unclear why Potratz's status as a non-acceptable medical source automatically devalues it. The SSA underscores that opinions from other medical sources may be of great value:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.
> . . . .
> . . . [D]epending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source," including the medical opinion of a treating source. For example, it may be appropriate to give more weight to the opinion of a medical source who is not an "acceptable medical source" if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion.

SSR 06-03P, 2006 WL 2329939, at *3, *5 (Aug. 9, 2006). Potratz treated Gursky in lengthy sessions and provided clinical findings and detailed notes of the sessions that correlate with his opinions. Due to the comprehensive nature of this treating

relationship, the court is uncertain how Potratz's "other medical source" status devalues his opinions.

The court also does not follow the logic of why the ALJ's second reason, the eight-month length of the treating relationship, should count against Potratz's opinions. Within those eight months, Potratz met with Gursky 16 times. This quantity of meetings works in favor of the opinion, not against it. See Hogston v. Comm'r of Soc. Sec., No. 16-1475, 2016 WL 9447154, at *5 (6th Cir. Dec. 29, 2016) (remanding to the ALJ because, among other reasons, the ALJ's finding that a therapist had an "'extremely brief' treating relationship" of five months was "unsupported" since the therapist met with the patient approximately 24 times in those five months). In light of the number of consultations Potratz had with Gursky, the court is unable to determine why the ALJ deemed the length of the treating relationship grounds for giving little weight to Potratz's opinions.

It is also hazy why the October 2013 end-of-treatment date works against the opinion. If the treatment had ended before the alleged onset of the disability, then it would be reasonable for the ALJ to rely upon this date in discounting Potratz's opinions. See Winslow v. Comm'r of Soc. Sec., 566 F. App'x 418, 421 (6th Cir. 2014)(citations omitted)(finding the ALJ properly gave little weight to an opinion "based on data from a time

before [the claimant's] alleged disability date"). Alternatively, if Potratz had not treated Gursky before her last date insured, then the assessment he provided in 2015 concerning her condition in 2013 would be of little probative value. See Seeley v. Comm'r of Soc. Sec., 600 F. App'x 387, 391 (6th Cir. 2015) (approving an ALJ's decision to "ignore[]" opinions from two treating sources made after the claimant's insurance ended when there was "no evidence that either [treating source] examined Claimant prior to" the date last insured). In the absence of either of these occurrences, is unclear how the date the treatment ended is cause to discount Potratz's opinion.[3] When explaining the reason for the weight given to Potratz's opinion, the ALJ did not provide a path of logic that the court could follow. Based on this failure to meet regulatory requirements, the court will remand the case for the ALJ to reconsider and reanalyze the weight that Potratz's opinion merits.

### 3. Assessment of Paul Hambrick's Opinion

Gursky argues that the ALJ should have given greater weight to the opinions of another of her therapists, Paul Hambrick,

---

[3]The court might have inferred from this language that the ALJ is suggesting the year-and-a-half gap between the end of the treatment and the creation of the medical assessment is cause for lessening the weight of the medical assessment; however, the ALJ's statement that the 2013 opinion merits little weight for the same reasons as the 2015 assessment bars that inference.

M.Ed. (ECF No. 12 at 16 to 18.) Hambrick treated Gursky almost every week from November 12, 2014, to May 12, 2015. (R. at 965–84.) Hambrick's notes from his treatment of Gursky indicate that they had 22 sessions together. (R. at 965–84.) Although Hambrick's notes are quite challenging to decipher, they indicate that during this treatment Gursky regularly mentioned her anxiety and depression and used terms like "angry," "zoned out," "numb," "rage," "vulnerable," "detached," and "lonely." (R. at 965–673, 980–83.)

On May 8, 2015, Hambrick filled out a mental assessment form based upon his sessions with Gursky. (R. at 976–77.) This form is essentially identical in format to the form that Potratz completed. On the form, Hambrick indicated that, even though he had not started treating Gursky until 2014, he believed the impairments existed on or before December 31, 2013. (R. at 276–77.) In the clinical findings section, he stated, "Client suffers from severe depression and anxiety. She also suffers from various bodily distresses and pain which are exacerbated with stress." (R. at 976.)

The ALJ gave this opinion little weight on the grounds that Hambrick is not an acceptable source and the opinion was "overly restrictive" when compared to Hambrick's treatment notes. (R. at 29.) Gursky opposes this point and argues that Hambrick's

treatment notes do support his finding. (ECF No. 12 at 17 to 18.)

Hambrick's notes are almost entirely inscrutable, which leaves the court unable to determine whether the notes support the severity of the limitations that he ascribes to Gursky. Regardless, the court finds that there are other factors that diminish the significance of this opinion. The opinion reflects a treating relationship that began after Gursky's last date insured. <u>See</u> <u>Conner v. Comm'r of Soc. Sec.</u>, 658 F. App'x 248, 254 (6th Cir. 2016) (finding a treating physician's opinion "not relevant" because it was based upon evaluations that occurred after "the relevant insured period"); <u>Seeley</u>, 600 F. App'x at 391. And, it consists of checked boxes supported by conclusory statements. <u>See</u> <u>Hernandez</u>, 644 F. App'x at 474; <u>Ellars</u>, 647 F. App'x at 566–67. These insufficiencies in Hambrick's opinion outweigh any errors the ALJ may have committed when analyzing the opinion. <u>See</u> <u>Schanck v. Comm'r of Soc. Sec.</u>, No. 12-14837, 2014 WL 1304816, at *6 (E.D. Mich. Mar. 31, 2014)(finding the unsupported nature of a therapist's opinion rendered remand for the ALJ's failure to analyze the opinion "an idle and useless formality" (quoting <u>Wilson</u>, 378 F.3d at 547)). Hence, remand on this point would be meaningless.

**E.  Whether the ALJ Erred When Assessing Gursky's Description of Her Symptoms**

Gursky disputes the ALJ's decision to deem her subjective complaints not credible. (ECF No. 12 at 18.) In her application and her hearing testimony, Gursky described the arc of her mental and physical condition from 2005 to 2013 as continuously deteriorating. (R. at 206.) While she was a foster parent of school-age children from 2009 till 2012, she stated that her condition impacted her ability to function — requiring her to rely on her husband for help and limiting the activities she could plan with the children to those that could occur while "sitting at the table." (R. at 56.) By 2012, her health worsened to the point that she could no longer foster. (R. at 206.) Gursky depicted her pain as hindering all aspects of her life including her ability to perform daily activities, sit, or sleep. (R. at 246–53.) She stated that her activity level depended on whether she was having "good days" or "bad days." On a good day she could to go grocery shopping; on a bad day the most she could do was "cook a small dinner" likely consisting of canned vegetables and frozen food. (R. at 247–48.)

The ALJ found that Gursky's work as a foster parent and her "mild" objective medical diagnoses rendered her complaints "less than credible." (R. at 29.) Gursky counters that these reasons are insufficient as she could still be found disabled regardless of whether she was a foster parent, and while her treatment

notes "may have shown only mild abnormalities," they also documented findings of "significant tenderness." (ECF No. 12 at 19.)

The Sixth Circuit has "'held that an administrative law judge's credibility findings are virtually unchallengeable' absent compelling reasons." Shepard v. Comm'r of Soc. Sec., No. 17-1237, 2017 WL 4251707, at *4 (6th Cir. Sept. 26, 2017) (quoting Ritchie v. Comm'r of Soc. Sec., 540 F. App'x 508, 511 (6th Cir. 2013)). Those compelling reasons appear when ALJs' credibility determinations are not "supported by substantial evidence." Rogers, 486 F.3d at 249. When making a credibility determination, ALJs "must consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7P, 1996 WL 374186, at *4 (July 2, 1996).[4]

_____

[4]This court has previously found that SSR 16-3p, the SSA's new ruling on assessing a claimant's subjective complaints, applies to judicial review of ALJ opinions predating March 28, 2016. See Patterson v. Colvin, No. 13-CV-1040-JDB-TMP, 2016 WL 7670058, at *6-*9 (W.D. Tenn. Dec. 16, 2016), report and recommendation adopted, No. 13-1040, 2017 WL 95462 (W.D. Tenn. Jan. 10, 2017). But, the SSA recently republished 16-3p and clarified that, while ALJs are to apply SSR 16-3p to any determination or decision that they make after March 28, 2016, the SSA expects reviewing courts to apply the "rules that were in effect at the time we issued the decision under review." SSR 16-3P, 2017 WL 5180304 *13 n.27 (Oct. 25, 2017). The ALJ's decision in this case is dated August 13, 2015. Hence, this court will assess the ALJ's compliance with 96-7p. See Lewis v. Berryhill, No. 16 C 7870, 2017 WL 5191877, at *6 (N.D. Ill. Nov. 9, 2017) (noting that the republished ruling requires the court to apply 96-7p, but emphasizing that the ALJ is still required to apply SSR 16-3p on remand).

In the event that "an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record . . . ." Id. Beyond objective medical evidence, the SSA has identified several specific considerations for ALJs. These include the claimant's daily activities; the location, duration, frequency and intensity of the symptoms; aggravating factors; type, dosage, effectiveness, and side effects of medications; treatment other than medication that the claimant receives; and any other information relevant to these symptoms. 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

The record does not support the first reason that the ALJ provided for discounting Gursky's subjective complaints. It is true that a claimant's ability to care for a child suggests a level of activity that can weigh against a finding of disability. See Moore v. Comm'r of Soc. Sec., 573 F. App'x 540, 543 (6th Cir. 2014). Nonetheless, Gursky explained that her condition forced her to stop fostering well before her last date insured. Thus, it is not apparent how her service as a foster parent discredits her subjective complaints. See Starks v. Astrue, No. 3:09-0062, 2011 WL 2433708, at *20-*22 (M.D. Tenn. June 14, 2011), report and recommendation adopted, No. 3:09-CV-00062, 2011 WL 2633138 (M.D. Tenn. July 5, 2011) (finding the ALJ's credibility determination unsupported by the evidence when

the ALJ "overstated [the claimant's] role as care-taker" of her mother).

Without the foster parent component, the ALJ's dismissal of Gursky's complaints rests entirely upon the lack of objective medical evidence to support her complaints. Although the ALJ listed all of the regulatory factors that ALJs must consider beyond objective medical evidence, there is no indication in the opinion that the ALJ applied the factors and considered the significance of other evidence in Gursky's records such as her consistent pursuit of treatment or the numerous pain medications and antidepressants prescribed to her. (R. at 233-50, 346, 351, 354, 369, 374, 378, 390, 463, 481, 745.) Consequently, this credibility determination relies on an impermissible reason for disregarding a claimant's complaints. See 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain . . . solely because the available objective medical evidence does not substantiate your statements.").

In addition, when a claimant has a fibromyalgia diagnosis, objective medical evidence of the condition is rare. Minor v. Comm'r of Soc. Sec., 513 F. App'x 417, 434-36 (6th Cir. 2013) ("[U]nlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs." (quoting Rogers, 486 F.3d at 243)); Kalmbach v. Comm'r

of Soc. Sec., 409 F. App'x 852, 863–65 (6th Cir. 2011) ("[T]he absence of objective medical evidence to substantiate the diagnosis of fibromyalgia or its severity is basically irrelevant."). Accordingly, the SSA requires ALJs assessing claimants with fibromyalgia to "consider a longitudinal record whenever possible because the symptoms of FM can wax and wane so that a person may have 'bad days and good days.'" SSR 12-2P, 2012 WL 3104869, *6 (July 25, 2012). The ALJ's reliance on the lack of objective medical evidence as a basis for setting aside Gursky's complaints disregards fibromyalgia's unique qualities and how these qualities might manifest in Gursky's life. For all of these reasons, the court finds that the ALJ's decision to disregard Gursky's complaints is unsupported by substantial evidence and constitutes reversible error. See Cole, 661 F.3d at 937 ("An ALJ's failure to follow agency rules and regulations 'denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" (quoting Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 407 (6th Cir. 2009))).

## III. CONCLUSION

For the foregoing reasons, the court reverses the ALJ's decision and remands the case pursuant to sentence four of 42 U.S.C. § 405(g) for proceedings consistent with this opinion.

IT IS SO ORDERED.

s/ Tu M. Pham
_____

TU M. PHAM
United States Magistrate Judge

December 19, 2017
_____

Date